UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JENNIFER BIRDWELL and** ) | |
| **MICHAEL BIRDWELL,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 3:07-0629** |
| ) | **Judge Echols** |
| **TIMOTHY CORSO, in his individual** ) | |
| **and official capacities, and the CITY OF** ) | |
| **RIDGETOP, TENNESSEE,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

This lawsuit arose as a result of two traffic stops of Plaintiff Jennifer Birdwell ("Ms. Birdwell") by Defendant Timothy Corso ("Corso") while he was employed as a police officer by Defendant City of Ridgetop, Tennessee ("Ridgetop"). Suit was originally filed by Ms. Birdwell and her husband, Plaintiff Michael Birdwell, in the Circuit Court for Robertson County, Tennessee, but removed to this Court because Plaintiffs allege violations of 42 U.S.C. § 1983 ("Section 1983), along with state law claims.

Pending before the Court is Ridgetop's Motion for Summary Judgment (Docket Entry No. 47), to which Plaintiffs have responded in opposition (Docket Entry No. 59). Also pending is Plaintiffs' Motion to Strike (Docket Entry No. 53), to which Ridgetop has responded in opposition.[1]

---

[1] Defendant Corso has not answered or otherwise responded to Plaintiffs' Complaint and the Clerk has entered an Entry of Default against him. (Docket Entry No. 32).

1

## I. FACTUAL BACKGROUND

Because Ridgetop has moved for summary judgment, the relevant facts must be construed in Plaintiffs' favor. The facts, so construed, are as follows.

On June 2, 2006, Ms. Birdwell was driving on Highway 31 in Robertson County, Tennessee when she was stopped for a minor traffic violation by Corso, who was then a Ridgetop police officer. During the traffic stop, Corso made a number of sexually inappropriate statements relating to Ms. Birdwell's tattoos and her husband, among other things. After an excessive and prolonged period, Ms. Birdwell was issued a traffic citation.

Several weeks later, on June 25, 2006, Corso stopped Ms. Birdwell for a minor traffic violation on Greer Road in Robertson County. Again, Corso allegedly made sexually explicit remarks and innuendos to Ms. Birdwell. Corso then allegedly required Ms. Birdwell to move her vehicle to an isolated welding shop on Greer road.

Corso asked Ms. Birdwell to lift up her shirt so he could see if she was "wearing a wire." Ms. Birdwell reluctantly pulled her top over her belly-button, but Corso said that was "not good enough," and that she needed to raise her shirt up over her breasts. Ms. Birdwell complied. Corso then said he needed to see if Ms. Birdwell had a wire under her shorts and told Ms. Birdwell to pull down her shorts. Ms. Birdwell pulled her shorts down to her "lower stomach," but Corso said "lower." After Ms. Birdwell protested and said she was not wearing any panties, Corso made Ms. Birdwell pull her shorts down to her knees, exposing her genitals and buttocks. Corso asked if he could touch her, but Ms. Birdwell stated that she did not want to be touched. Nevertheless, Corso reached into Ms. Birdwell's shirt and fondled her breast and nipple. He also rubbed his erect penis on Ms. Birdwell's arm. (Docket Entry No. 59-2 at P-00010 – P-00015).

Ms. Birdwell filed a complaint with Ridgetop the following day, June 26, 2006. Corso resigned that same day after he was suspended and his badge, gun, and other police equipment were taken away from him.

In August 2006, Corso was charged with felony sexual contact in violation of T.C.A. § 39-13-501, and abuse by an authority figure in violation of T.C.A. § 39-13-527. In May 2007, he pled guilty to a charge of false imprisonment and voluntarily agreed to seek decertification as a police officer. Subsequently, Corso was decertified as a police officer.

Prior to working for Ridgetop, Corso was employed by the Millersville, Tennessee police department from May 16, 2002, until he resigned on September 15, 2005 while under investigation for sexually harassing a female motorist. According to a complaint filed by Cheree Lamborn ("Ms. Lamborn"), Corso stopped her early in the morning on September 1, 2005, allegedly because she was driving with a broken tail light. Corso had stopped her a month earlier, allegedly for the same infraction. While speaking with Ms. Lamborn, Corso said that he did not mean to make her uncomfortable, but that he could not help noticing that she kept pulling up her low-cut shirt and said she seemed to be flirtatious. Corso directed Ms. Lamborn to drive down to a BP gas station so they could talk.

Once at the gas station, Corso asked Ms. Lamborn if she was "looking for someone." When she replied in the negative, Corso told her that he was "interested" in her, and, to explain that "interest" said it was "how swingers take care of home and have a little fun on the side to relieve stress." (Docket Entry No. 59-1 at 9). Corso then observed "it happens all the time with cops," and that he had previously been the subject of a complaint by a citizen for which he was called on the carpet by his police chief. Ms. Lamborn told Corso that she needed to be on her way, to which Corso replied

3

"ok." Before she left, Corso told Ms. Lamborn that if she ever got the "urge" to stop in Millersville, he was there from Tuesday to Saturday. Corso also told Ms. Lamborn that she should be "happy that [she] was hit on by a cop." Id. at 10.

As a result of that incident, an investigation was instituted and Corso was suspended. While the investigation was underway, Corso wrote a letter of resignation addressed to Millersville Chief of Police Ronnie Williams ("Chief Williams") in which he indicated that he was resigning and "retiring from law enforcement all together [sic]." Id. at 15. In the letter, Corso indicated that part of the reason he was resigning was because of "complaints" that had been made against him. Corso's resignation was accepted and the investigation closed. His Police Officer Standards and Training Commission ("POST") records indicate that Corso resigned from the Millersville Police Department on September 14, 2005 while "under investigation." (Docket Entry No. 59-4 at 1).

Ms. Lamborn was not the only one who complained about Corso's conduct when he was a Millersville police officer. In July 2003, Corso and another Millersville officer were accused of sexual harassment by female employees at a local store. The police chief at the time, Vincent D. Ford, ordered Corso to undergo psychological counseling because of the "sexual harassment complaints," and because there were other complaints about Corso's demeanor and attitude. Id. at 16-19.

Approximately five months after resigning from the Millersville Police Department, Corso applied to the Ridgetop Police Department. After receiving the application, Ridgetop Police Chief Randall Adcock ("Adcock") called the references Corso had listed, including Chief Williams. Adcock claims that Chief Williams told him Corso was a good officer, that he was very thorough in his work, that he made good cases, and that he presented himself well in public. He also claims Chief Williams said Corso resigned from Millersville for personal reasons, but did not provide Chief Adcock with any

4

more specific information. In his deposition in this case, Chief Williams testified that while he stated that Corso was a good police officer, he also told Chief Adcock that he needed to look at Corso's file and there were "several instances in his personnel file." (Williams Depo. at 21). Chief Williams also testified that Chief Adcock did not ask him why Corso resigned.

In addition to Chief Williams, Chief Adcock spoke with the three other references on Corso's application. All were police officers, and all indicated that Corso was a good police officer.

In addition to checking references, Chief Adcock also ran a criminal history check through the National Crime Information Center, and federal, state and local authorities. He also checked Corso's POST record. However, Chief Adcock did not review Corso's personnel file from Millersville prior to hiring Corso.

Corso was interviewed for a police officer position by Chief Adcock and Ken Parson, a police commissioner and alderman. During the interview, Chief Adcock asked Corso about his reasons for leaving Millersville and Corso explained that he left after a consensual relationship with a citizen soured when Corso refused to leave his wife and the citizen filed a complaint against him. Chief Adcock was satisfied with Corso's response.

Corso was hired by Chief Adcock on March 6, 2006. Within a month of the hiring, Chief Adcock heard that Corso had been the subject of a sexual harassment complaint while employed by Millersville. Chief Adcock telephoned Chief Williams about the complaint and was told by Chief Williams that he should come to Millersville and review Corso's personnel file. Chief Adcock drove to Millersville and reviewed Corso's personnel file in Chief Williams' presence.

The personnel file reviewed by Chief Adcock included the September 2005 handwritten complaint of Ms. Lamborn. It did not, however, contain an audio recording of the underlying traffic

stop. Chief Adcock claims that the file also did not contain any documents which would suggest that Ms. Lamborn's complaint had been investigated or otherwise resolved by the Millersville Police Department. Nevertheless, Chief Williams testified in his deposition in this case that because of the "other stuff" in Corso's personnel folder "there should have been more questions asked." (Williams Depo. at 22). Chief Williams also claims he told Chief Adcock that Corso had "issues with women." (Id. at 67).

After reviewing Corso's personnel file for twenty to thirty minutes, Chief Adcock returned to Ridgetop and confronted Corso about the complaint made by Ms. Lamborn. Corso informed Chief Adcock that Ms. Lamborn was the citizen with whom he had a consensual relationship and that the complaint was filed after Corso refused to leave his wife for her. Chief Adcock was satisfied with this response. He heard no further complaints about Corso's interactions with females until the June 25, 2006 incident at issue in this case.

## II. APPLICATION OF LAW

In the Amended Complaint, Plaintiffs bring both federal and state law claims against Ridgetop. They bring federal claims for constitutional deprivations in violation of 42 U.S.C. § 1983, and state law claims under the Tennessee Human Rights Act ("THRA") and the Governmental Tort Liability Act ("GTLA"), including negligent hiring and supervision. Ridgetop has moved for summary judgment with respect to all the claims asserted against it. Prior to reaching that Motion, however, the Court will address Plaintiffs' Motion to Strike.

### A. **Plaintiffs' Motion to Strike**

Plaintiffs move to strike paragraphs 5 through 9 and paragraph 14 of Chief Adcock's Affidavit which was filed in support of Ridgetop's Motion for Summary Judgment. Plaintiffs assert that those

6

paragraphs should be stricken because Ridgetop is effectively trying to shift the blame for its lack of knowledge about Corso to Millersville. Plaintiffs argue that is an attempt to impute fault to Millersville, but the time for amending pleadings has passed.

This Court does not read the subject paragraphs of Chief Adcock's Affidavit as an attempt (in a legal sense) to shift the blame from Ridgetop to Millersville. Rather, in his Affidavit, Chief Adcock explains the process he went through in hiring Corso, including his version of the conversations he had with Chief Williams. He also states that when he reviewed Corso's personnel file it was not complete, that he did not understand why that was so, and that he also did not understand why Chief Williams did not tell him about Corso's past when they spoke on the phone and when Chief Adcock reviewed Corso's personnel file in Chief Williams' presence. Chief Adcock also specifically denies that Chief Williams told him that Corso had "issues with women." While Chief Adcock does state in Paragraph 14 that because of the lack of information sharing by Chief Williams, he "believe[s] Millersville should take responsibility for what happened to Ms. Birdwell" (Adcock Depo. ¶ 14), that is a personal opinion and not a legal assertion. In any event, it is irrelevant to this Court's decision on the Motion for Summary Judgment.

Moreover, Ridgetop has indicated that it is not asserting comparative fault as a defense to Plaintiffs' claims and has no intention of doing so. Accordingly, the Motion to Strike will be denied.

### B. Ridgetop's Motion for Summary Judgment

#### 1. *Standard of Review*

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The

moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met.  See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial.  If the party does not so respond, summary judgment will be entered if appropriate.  Fed. R. Civ. P. 56(e).  The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### *2. Federal Constitutional Claims Under Section 1983*

Ridgetop moves for summary judgment on Plaintiffs' Section 1983 constitutional deprivation claims, arguing that it cannot be held liable on a *respondeat superior* basis for the tortious acts of Corso.  Plaintiffs recognize that a municipality cannot be held liable under Section 1983 for the intentional act of its employees on the basis of *respondeat superior,* but argue Ridgetop is liable because of its failure to train and/or supervise Corso and/or because of its hiring of Corso.  Because the Court concludes that Plaintiffs can establish a Section 1983 claim for constitutional deprivations

8

based on Ridgetop's decision to hire Corso, summary judgment will not be granted on Plaintiffs' federal constitutional claims.

So far as relevant, section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983. A sexual assault by a state actor constitutes a deprivation of a constitutional right. Doe v. Clairborne County, 103 F.3d 495, 506 (6th Cir. 1996). The issue in this case is whether Ridgetop, as the employer of Corso, can be held liable under Section 1983 for that deprivation.

In Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978), the Supreme Court held that municipalities are "persons" within the meaning of section 1983, but also that a municipality could not be held liable under Section 1983 solely because it employed a tortfeasor. Id. at 692. Rather, to hold a municipality liable under Section 1983, a plaintiff must identify a municipal policy or custom that caused plaintiff injury. Id. at 694.

Plaintiffs seek to impose liability against Ridgetop under Section 1983 on the theory that it failed to properly train Corso. In this regard, they note that the operations manual for the police department contains no prohibitions against sexual harassment, and that Corso did not complete a required 25 hour training course which includes sexual harassment training.

"[T]here are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). The inadequacy of

9

police training may serve as the basis for § 1983 liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 378.

To succeed under a failure to train theory, Plaintiff must show that: "1) [Ridgetop's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of [Ridgetop's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006). Plaintiff cannot establish the second element.

"'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Currie v. Haywood County, Tenn., 234 Fed. Appx. 369, 327-373 (6th Cir. 2007)(quoting, Perez v. Oakland County, 466 F.3d 416, 430-31 (6th Cir. 2006)). "Although it is possible that 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability,' . . . '[a]llegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training.'" Id.

In this case, there is scant evidence before the Court relating to Corso's training or lack of training, and no evidence about other officer's training. As such, the Court finds that Plaintiffs cannot prevail on a Section 1983 claim under a failure to train theory.

Plaintiffs' argument that Ridgetop can be held liable under Section 1983 on a failure to supervise theory also fails. The Sixth Circuit held that because Section 1983 liability must be based on more than respondeat superior, "'a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of

10

misconduct or in some other way directly participated in it.'" Grose v. Caruso, 284 Fed. Appx. 279, 282 (6th Cir. 2008)(quoting, Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). "'At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Id. at 282-283.

Here, notwithstanding the fact that Chief Adcock learned of the Millersville sexual harassment complaint a month after Corso was hired, there is no evidence that Chief Adcock authorized, approved, or knowingly acquiesced in any sexual harassment by his officers. Since Chief Adcock cannot be found liable on this basis, it follows that Ridgetop cannot be held liable.

While Plaintiffs cannot hold Ridgetop liable under Section 1983 based upon a failure to train or supervise theory, they may be able to persuade a jury that Ridgetop should be liable under Section 1983 because of the decision to hire Corso. In Bryan County Comm'rs. v. Brown, 520 U.S. 397, 412 (1997) the Supreme Court discussed Monell in the context of a single hiring decision by a county sheriff and whether such a hiring decision could constitute a policy for purposes of municipal liability in the context of an excessive force claim. The Supreme Court held that there must be a link between the actual background of the person being hired and "the risk that, if hired, he would use excessive force." Id. at 411. In doing so, the Court wrote:

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

Id. at 412 (emphasis in original, citation omitted). The Supreme Court queried under what circumstances "a single instance of inadequate screening could ever trigger municipal liability," but held that for such liability to exist, the plaintiff would have to show that the sheriff, after full review

11

of the prospective employee's record, "should have concluded that [the prospective employee's] use of excessive force would be a plainly obvious consequence of the hiring decision." Id. at 413. Thus, "to prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. at 410.

Here, Plaintiffs have established a link between Chief Adcock's decision to hire Corso and the assault on Ms. Birdwell. Corso's Millersville personnel record contains a complaint about sexual harassment of a female motorist on two occasions after she was stopped for a minor traffic violation, and complaints about sexual harassment by him and another officer at a local business which resulted in the Chief of Police ordering Corso to undergo psychological counseling. Corso was suspended and an investigation was underway when Corso resigned from the Millersville police department because of "complaints" made against him. Chief of Police Williams of Millersville testified at his deposition that he told Chief Adcock of Ridgetop that Corso had "issues with women" and there were "several instances in his personnel file." Notwithstanding that record, and notwithstanding that Corso resigned while an investigation into sexual harassment was ongoing, Ridgetop, through its Police Chief, hired Corso. A jury could conclude that Corso was likely to engage in sexual harassment were he allowed to patrol the streets as a police officer after he left Millersville, and could further conclude that a "plainly obvious consequence of the . . . decision" to hire Corso would be that he would engage in sexual harassment of a female motorist.

In reaching the conclusion that summary judgment should not be granted on Plaintiffs' hiring claim under Section 1983, the Court has considered Chief Adcock's assertion in his affidavit that when he reviewed Corso's personnel file at the Millersville Police Department some documents and the

12

audio recording were not in that file, and that Chief Williams chose not to divulge to him all of his knowledge about Corso. These allegations, along with other disputed matters, create genuine issue of material fact which militate against summary judgment on this claim. Even if Chief Adcock's statement is true, the fact remains that Ms. Lamborn's written statement was in the personnel file, and a jury could conclude that document alone should have given Chief Adcock serious pause for concern and the need to investigate further. Also, Chief Williams testified in his deposition that with what was in the personnel file "there should have been more questions asked," that Chief Adcock did not even ask him why Corso resigned, and that he told Chief Adcock that Corso had "issues with women." What Chief Adcock actually knew or should have known about Corso's activities while a Millersville police officer and whether Ridgetop should have hired him as a police officer is a question for the jury.

### 3. *State Law Claims*

In moving for summary judgment on Plaintiffs' state law claims, Ridgetop merely argues "[i]t goes without saying that if the City is not liable under Monell, then it should also not be found liable under the THRA or the GTLA." (Docket Entry No. 48 at 13). What Monell has to do with state law claims is not clear. Regardless, Ridgetop's argument is an insufficient basis on which to grant summary judgment on Plaintiffs' state law claims.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]" Celotex, 477 U.S. at 324. Here, the only basis Ridgetop advances for granting summary judgment on the state law claims is its assertion that it cannot be liable under Monell. However, the Court has concluded that Plaintiffs may be able to establish municipal liability under Section 1983. Therefore, Ridgetop's claim that it cannot be held liable for state law violations because of Monell necessarily fails.

13

## III. CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion to Strike (Docket Entry No. 53) will be denied. Defendant City of Ridgetop's Motion for Summary Judgment (Docket Entry No. 47) will be granted with respect to Plaintiffs' failure to train and to supervise claims under Section 1983, but denied with respect to Plaintiffs' hiring claim under Section 1983 and their state law claims.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE