IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JENNIFER BIRDWELL and ) | |
| MICHAEL BIRDWELL, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-0629 |
| ) | Judge Trauger |
| TIMOTHY CORSO, in his individual ) | |
| and official capacities, and the CITY OF ) | |
| RIDGETOP, TENNESSEE, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

In advance of the December 7, 2010 trial in this case, the plaintiffs have filed a Motion *in Limine* to Exclude Testimony of Defendant City of Ridgetop's Proffered Expert Dennis Mays (Docket No. 176). The City of Ridgetop ("Ridgetop") has filed a response in opposition (Docket No. 179), and the plaintiffs have filed a reply in support (Docket No. 185). This motion will be granted, and Mays will be excluded from testifying at trial.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs' Second Amended Complaint asserts four claims. These claims all arise out of defendant and former police officer Timothy Corso's alleged inappropriate conduct toward, and sexual assault of, plaintiff Jennifer Birdwell during a pair of traffic stops in June 2006 and Ridgetop's failure to prevent the incidents in light of, among other things, Corso's "history of sexual harassment," while employed as a police officer with the City of Millersville, Tennessee. (Docket No. 180 at 4-7.)

1

First, the plaintiffs assert a claim of false imprisonment and seek to impose *respondeat superior* liability against Ridgetop because Corso "unlawfully detained plaintiff Jennifer Birdwell against her will." (*Id.* at 4.) Second, the plaintiffs claim that Corso assaulted Mrs. Birdwell and that Ridgetop "had reason to know that excessive force would be or was being used and had both the opportunity and the means to prevent the harm from occurring." (*Id.* at 5.) Third, asserting common law negligence, the plaintiffs allege that Ridgetop negligently hired Corso by not sufficiently checking his background. (*Id.* at 6.) Finally, under Section 1983, the plaintiffs claim that Corso violated Mrs. Birdwell's constitutional rights through his conduct during the traffic stops and that Ridgetop violated those rights through its negligent hiring. (*Id.* at 6-7.)

It is clear from the plaintiffs' Complaint that, as against Ridgetop, this is a negligent hiring case. In this context, the plaintiffs move to exclude Ridgetop's proffered expert, Dennis Mays (and his proposed expert narrative). (Docket No. 176.) Mays's narrative has four sections: introduction and qualifications, factual summary, and two opinions. (Docket No. 176 Ex. 1.)

In "introduction and qualifications," Mays maintains that he has a law degree, but, since 1993, he has conducted "training seminars for law enforcement officers and law enforcement agencies." (*Id.* at 1.) In addition, he was a Commander for the Jackson, Tennessee police department from 1990 to 2009, managing and directing a wide variety of police units and teams, as well as operating as the chief legal advisor to the Jackson Chief of Police. (*Id.* at 2.) Additionally, from 1990 to 1998, Mays was an adjunct faculty member at the University of Tennessee with an academic focus on criminology. (*Id.*) Prior to 1990, he worked in an

2

investigatory role for a series of government and metropolitan entities, providing him with additional opportunities to train and instruct police officers and others in appropriate police practices and procedures. (*Id.* at 2-3.) Mays "rel[ies] upon [his] many years of experience as a law enforcement officer, police trainer and supervisor, and for the most recent 19 years prior to September 2009, as a senior command staff executive of a police department," along with his specific experiences promulgating police policy and evaluating officer conduct, to form his opinions in this case. (*Id.* at 4-5.)

After providing an unremarkable factual summary of the primary events in this case (*Id.* at 5-8), Mays turns to his two opinions. First, Mays maintains that Ridgetop's "police policies and procedures are acceptable." (*Id.* at 8.) In this opinion, Mays simply lists a series of Ridgetop Police Department policies regarding appropriate police officer conduct (including how a male officer is to conduct a proper search of an unarmed female suspect) and concludes that these polices and procedures "adequately place officers on notice that they must recognize and respect a citizen's constitutional rights . . . . The Ridgetop Police Department has no policy that permits an officer to conduct himself as alleged by the Plaintiffs." (*Id.* at 8-10.)

Second, after describing the steps that Ridgetop Police Chief Randall Adcock took during the hiring process to confirm that Corso was a competent police officer, Mays offers the opinion that "Chief Adcock met the standard of care required of an administrator making a hiring decision of a law enforcement officer with regard to Corso . . . . his decision [to hire] was reasonable." (*Id.* at 11.) The plaintiffs have now moved to exclude Mays as an expert.

## ANALYSIS

**I.     The *Daubert* Standard**

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), in its "gate-keeping" role, a trial court must evaluate the relevance and reliability of all expert testimony, whether the testimony offered is "scientific" or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). When the proffered expert testimony is outside of the scientific realm, the court's fundamental objective is to generally evaluate relevance and reliability based upon whatever factors are important in the particular case. *Id*. at 151. That is, the court is to ensure that the expert, whatever his field, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The court's paramount consideration, as explicitly stated in Federal Rule of Evidence 702, is whether the proffered testimony will assist the trier of fact. Fed. R. Evid. 702.

The Sixth Circuit has explored the standards that the district courts should use in evaluating whether so-called "police practices" experts should be allowed to testify at trial. *See Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994); *Champion v. Outlook Nashville,* 380 F.3d 893, 907-08 (6th Cir. 2004). In *Champion*, in discussing experts who opine on police practices and procedures, the Sixth Circuit clarified *Berry*, noting that, if the proffered expert had "specialized knowledge" and "specific expertise about police activities" with "experience on the subject of criminology or police actions" such that the proffered expert could opine on "discrete aspect[s] of police practices [such as] excessive force, based upon [] particularized knowledge about the area," then the testimony would likely be permissible, particularly if it was supported by strong experiential or educational credentials. *Id.* In sum, the court stated that "the proper actions of individual officers in one discrete situation" is an appropriate field for expert testimony, so long as the expert has sufficient credentials and the testimony will assist the trier of

4

fact. *Id.*

## II. The Motion to Exclude Mays[1]

While the plaintiffs raise several concerns about Mays's proffered testimony (including his status as an attorney, his interpretation of the facts, and his alleged use of improper legal conclusions), their primary argument is that "no expert witness would be needed to explain the acceptability or reasonableness of [the] hiring . . . in the case at bar." (Docket No. 185 at 2.) That is, while police practices experts are appropriate to provide "specific expertise about police practices," this is ultimately a negligent hiring case, and it is "within the common knowledge of the jury" whether, under the facts presented, Ridgetop acted appropriately in making its hiring decision. (*Id.*)

In its response, Ridgetop argues that Mays's proposed testimony does not consist of improper legal conclusions and that Mays, based upon his "experience as a senior command executive of a police department," has "specialized knowledge concerning a law enforcement agency's hiring process and whether Ridgetop's hiring process was acceptable, and whether it met nationally recognized police standards." (Docket No. 179 at 6.) Ridgetop argues that, under *Champion*, Mays is "properly credentialed," he will testify "about a discrete area of police practices," that is, "the process of hiring a law enforcement officer," and he will assist the trier of fact because he will "assist the jury in understanding acceptable standards for the police hiring

---

[1] Ridgetop also argues here, and in its briefing on its Motion to Continue Trial Date (Docket No. 166), that the plaintiffs have gone beyond the court's instructions in the August 11, 2010 status conference to "back-door" into the proceedings a "late" *Daubert* motion concerning Mays. To the extent that the plaintiffs' motion exceeds what may have been unclear direction from the court at the status conference, the court will allow the motion, as it is very clear to the court that the resolution of this *Daubert* issue is in the interest of both judicial economy and a fair trial.

process and the alleged failure in hiring in this case." (*Id.* at 7.) Ridgetop also points out that Mays has been a frequent expert in jury trials, including in a recent "highly emotional case before Judge Haynes" in this district. (*Id.* citing *Adams v. Garrett*, *et al.*, Case No. 3:06-788).

The plaintiffs have the better of the argument here. Mays, given his experiences in police supervision and training, undoubtedly has "specialized knowledge" that could assist the trier of fact in certain cases, such as *Adams,* which raised issues of whether the police responded appropriately to the plaintiff's request for police assistance. (*See* Case No. 3:06-788, Docket No. 89 at 2.) As can be seen from considering Mays's two proffered opinions, however, the jury's resolution of the issues raised in this case would not be aided by Mays's proposed testimony.

First, Mays's opinion that the relevant "police policies and procedures are acceptable" because they prohibited the conduct at issue and because the "Ridgetop Police Department has no policy that permits an officer to conduct himself as alleged by the Plaintiffs" is not helpful to the trier of fact. (Docket No. 176 Ex. 1 at 8-10.) A Ridgetop employee can readily introduce the polices and procedures at issue, and a jury does not require the assistance of expert testimony to recognize that it is "acceptable" or appropriate that a police department's policies and procedures would prohibit the illegal conduct in which Corso is alleged to have engaged.

Mays's second opinion that Adcock's conduct in hiring Corso was "reasonable" is not particularly helpful to the finder of fact and is also not sufficiently reliable. Again, the primary issue is whether Ridgetop, through the administrative procedures that it used (or did not use) to evaluate candidates, should incur liability related to Corso's misconduct. As the plaintiffs correctly argue, evaluating what is an acceptable hiring practice does "not require expert testimony any more in a police hiring case than [it] would in a hiring case involving a childcare

business, a school, a city office, a mental hospital, or any other position involving hiring a potential authority figure." (Docket No. 185 at 2.) That is, it is well within the purview of the jury to evaluate whether the steps an employer took to evaluate the competency of a candidate were reasonable, based upon all of the facts. There has been no showing that "specialized knowledge" is necessary to inform the jury on this issue.

Moreover, even if the jury's evaluation of Ridgetop's hiring practices would be aided by expert testimony, Ridgetop has not shown that Mays's particular experiences have provided him with "specialized knowledge" in this particular area. That is, while Ridgetop repeatedly points to the fact that Mays has conducted "training seminars for officers and has taught police courses" and that Mays was a "senior command executive of a police department" who "propound[ed] law enforcement policies" and investigated and disciplined officers, it remains unclear how that experience has provided Mays with "specialized knowledge" as to acceptable hiring practices. (Docket No. 179 at 2, 6.) Any specific, specialized experience and training that Mays has in the appropriate steps to take in evaluating the background of a potential employee is simply not provided in his expert narrative.

In light of all of this, the court concludes that Mays's testimony would not be sufficiently reliable, would not assist the trier of fact, and should be excluded. The plaintiffs' Motion *in Limine* to Exclude Testimony of Defendant City of Ridgetop's Proffered Expert Dennis Mays (Docket No. 176) is **GRANTED**, and Dennis Mays is excluded from testifying for Ridgetop at the trial of this matter.

It is so ordered.

Enter this 25th day of October 2010.

ALETA A. TRAUGER
United States District Judge